IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID SHARP, | ) |
| | ) |
|                 Plaintiff, | ) |
| | ) |
| vs. | )    Case No. 3:16-cv-1083-JPG |
| | ) |
| JOE KEELING, | ) |
| WABASH COUNTY, ILLINOIS, | ) |
| JOHN DOE, and | ) |
| JANE DOE. | ) |
| | ) |
|                 Defendants. | ) |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff David Sharp is currently incarcerated at the Vienna Correctional Center in Sumner, Illinois, but was previously incarcerated at the Wabash County Jail in Mount Carmel, Illinois. (Doc. 1 at 1.) Proceeding *pro se*, Sharp has filed a complaint under 42 U.S.C. § 1983, alleging that the Sheriff of Wabash County, two of the guards at the Wabash County Jail, and Wabash County itself violated Sharp's constitutional rights during his detention at the jail. (*Id.* at 3-5.) Sharp seeks money damages and permanent injunctive relief. (*Id.* at 5.)

This matter is now before the Court for a review of Sharp's complaint pursuant to 28 U.S.C. § 1915A. Under § 1915A, the Court shall review a "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a government entity." During the § 1915A review, the court "shall identify cognizable claims or dismiss the complaint, or any portion of the complaint," if the complaint "is frivolous, malicious, or fails to state a claim" or if it "seeks monetary relief from a defendant who is immune."

## Background

According to Sharp's complaint, Sharp was arrested and shortly thereafter held at the Wabash County Jail on December 14, 2013.  (*Id.* at 3.)  Sharp has a history of post-traumatic stress disorder and other problems, and has also suffered a traumatic brain injury—all seemingly in connection to his service with the United States Army.  (*Id.*)  At the time of his arrest, Sharp was being treated by the Veterans Administration; doctors with the agency had prescribed him a number of medications for mental health problems and sleep issues.  (*Id.*)  Sharp's wife brought his prescription medications to the jail shortly after his arrest, and Sharp had enough refills to last him until May 2014, so jail staff evidently provided him with his medications from December 2013 to May 2014.  (*Id.* at 3 & 4.)  In March 2014, one of the male guards at the jail, who Sharp refers to as John Doe throughout his complaint, allegedly gave Sharp the wrong medication.  (*Id.* at 4.)  Sharp had a psychotic episode and had to be placed temporarily in an isolation cell.  (*Id.*)

From December 2013 to January 2014, Sharp went on a hunger strike at the jail.  (*Id.*)  During that time period, he hid a piece of glass in his clothes, with the ultimate plan to harm himself.  (*Id.*)  After seeing his father during a court hearing in early January 2014, Sharp seemingly changed his mind about a desire to hurt himself and, upon returning to jail, turned the broken piece of glass over to an unknown female guard, who Sharp has named Jane Doe for purposes of this lawsuit.  (*Id.*)  Sharp told the female guard of his aborted plan to kill himself and asked to see a counselor, but according to Sharp, the guard did nothing to help him.  (*Id.*)

By May 2014, Sharp's medication refills had run out, so he asked Sherriff Keeling to arrange an appointment with a doctor so that his prescriptions could be renewed.  (*Id.*)  Keeling refused, and Sharp went off his medications for an unknown period.  (*Id.*)  At some later point, Sharp was transferred to Chester Mental Health Center so that he could be assessed as to his

fitness to go to trial. (*Id.*) He was found fit to stand trial, returned to Wabash County Jail, and ultimately handed off to the Illinois Department of Corrections in December 2014. (*Id.*)

During his tenure at the Wabash County Jail, Sharp claims that he submitted a number of grievances to Sheriff Keeling concerning his need for care. (*Id.* at 2.) Unsatisfied with Keeling's apparent decision to ignore those grievances, Sharp filed suit in this Court. (*Id.*)

## Discussion

Turning to the substantive allegations in Sharp's complaint, the Court finds it proper to divide the claims in the complaint into the following counts. The parties and the Court will use these designations in all pleadings and orders, unless otherwise directed by the Court.

**COUNT 1:** Officer Jane Doe, Officer John Doe, and Sheriff Keeling were deliberately indifferent to Sharp's mental health conditions when Jane Doe refused him a counselor in January 2014, when John Doe gave him the wrong medication in March 2014, and when Keeling refused to secure refills from May 2014 onward, all in violation of Sharp's constitutional rights.

**COUNT 2:** Wabash County was deliberately indifferent to Sharp's medical needs, in violation of Sharp's constitutional rights.

Sharp's complaint primarily concerns his mental health care at the Wabash County Jail by a John Doe guard, a Jane Doe guard, and Sheriff Keeling, so the Court will start there (**Count 1**). Sharp's medical claims are best premised on the Fourteenth Amendment rather than the Eighth Amendment, as he appears to have been a detainee rather than a prisoner at the time in question. *See Estate of Booker v. Gomez*, 745 F.3d 405, 421 (10th Cir. 2014). That said, the elements of a medical claim are roughly the same under both amendments: to make out a claim, a detainee must allege that he had a serious medical condition and that officials were deliberately indifferent to that condition. *E.g.*, *Burton v. Downey*, 805 F.3d 776, 784 (7th Cir. 2015); *Pittman ex rel. Hamilton v. County of Madison, Ill.*, 746 F.3d 766, 775 (7th Cir. 2014).

For screening purposes, Sharp has alleged the existence of an objectively serious medical condition. An objectively serious condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001). Factors that indicate a serious condition include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997). Here, Sharp's suicide threat, need for counseling, and mental health issues all qualify as serious at the threshold stage, especially given Sharp's allegations concerning his medication history and his past treatment with the Veterans Administration. *See id.* at 1372 n.7.

For screening purposes, Sharp's complaint also sufficiently alleges that Sheriff Keeling and Officer Jane Doe acted with deliberate indifference. To be sure, "medical malpractice, negligence, or even gross negligence" by an official "does not equate to deliberate indifference." *Johnson v. Doughty*, 433 F.3d 1001, 1012-13 (7th Cir. 2006). That said, deliberate indifference can exist when an official fails to provide any treatment for a medical condition, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010), when an official persists with ineffective treatment for a medical problem, *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005), or when an official delays medical treatment or needlessly prolongs a prisoner's pain, *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). Sharp alleges that Jane Doe ignored his requests for a counselor and that Sheriff Keeling did little to nothing to help renew the prescriptions that were ordered by a previous physician, and that is sufficient to state a claim against those two officials at this stage of the case. **Count 1** may proceed as to Sheriff Keeling and Officer Jane Doe.

While Sharp's deliberate indifference claim can proceed as to those two defendants, it must be dismissed as to Officer John Doe, as Sharp has not alleged that John Doe acted with the requisite intent for a constitutional tort. It is critical to remember that medical malpractice and negligence claims are not actionable under § 1983, but are instead the grist of state law. *See*, *e.g.*, *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) ("[L]iability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process."); *Mayan v. Weed*, 310 F. App'x 38, 40-41 (7th Cir. 2009) (allegations of "medical malpractice, negligence, or even gross negligence" are not sufficient to permit liability in detainee cases); *Chapman v. Keitner*, 241 F.3d 842, 845 (7th Cir. 2001) ("Neither negligence nor even gross negligence is a sufficient basis for liability; rather, liability attaches only if the conduct is intentional or criminally reckless."). In this vein, a bare allegation that an officer gave a detainee the wrong medication suggests only negligent conduct by that official, and not the kind of recklessness needed to put forth a constitutional claim. *See*, *e.g.*, *Positano v. Wetzel*, 529 F. App'x 116, 119 (3d Cir. 2013) (allegation that doctor gave a prisoner the "wrong medication" suggested at best "medical malpractice," and not a constitutional violation); *Daniels v. Beasley*, 241 F. App'x 219, 220 (5th Cir. 2007) (allegation that prisoner was given "wrong medication" did not establish "actions involv[ing] more than negligence"); *Johnson v. Doe*, 234 F.3d 1273 (7th Cir. 2000) (dismissal proper when prisoner only alleged that officials "mistakenly gave him the wrong medication"). Because the allegations in Sharp's complaint about the medication slip-up suggest (at best) negligent conduct, **Count 1** must be dismissed without prejudice as to John Doe.

Sharp next alleges that Wabash County itself is liable for the failures in the jail's medical care (**Count 2**). To be clear, Wabash County cannot be liable merely because Sheriff Keeling and Jane Doe may have worked for it at the time that Sharp was detained at the jail—Section

1983 requires personal liability on the part of each defendant named in a case, so the doctrine of *respondeat superior* is inapplicable in the constitutional tort context, including for private corporations like Wexford. *See Shields v. Illinois Dep't of Corrections*, 746 F.3d 782, 789 (7th Cir. 2014). Rather, Sharp can only state a claim against Wabash County if he alleges that it had an unconstitutional policy or practice that played a role in his constitutional violation. *Olive v. Wexford Corp.*, 494 F. App'x 671, 672-73 (7th Cir. 2012). The emphasis is on "unconstitutional"—a plaintiff must allege that the entity's policy or practice "evinces a deliberate indifference to the rights of the individuals with whom [the entity] will interact." *Rice ex rel. Rice v. Correctional Medical Servs.*, 675 F.3d 650, 675 (7th Cir. 2012); *see also Shields*, 746 F.3d at 795-96 (plaintiff must allege that injury was caused by a "policy, custom, or practice of deliberate indifference). In this case, Sharp has alleged very little about any policies put in place by Wabash County that led to his harm. More fundamentally, he has not alleged that any funding policies were put in place with indifference towards medical care at the jail. For both of those reasons, **Count 2** against Wabash County must be dismissed without prejudice.

A few closing notes are in order concerning Sharp's complaint. First, Sharp not only asks for monetary damages in his request for relief, but also for injunctive relief targeted at the Wabash County Jail. The rub is that Sharp has been transferred out of Wabash County Jail for some time and he does not allege anywhere in his filings that there is a chance he will return there anytime soon, so his request for injunctive relief is moot. *See Morris v. Kingston*, 368 F. App'x 686, 689 (7th Cir. 2010). Second, as the Court already mentioned above, Sharp has sued an unknown female guard at the Wabash County Jail concerning his care. That claim will be allowed to proceed, but the Jane Doe guard must be identified with particularity before service of the complaint can occur on her. Where a detainee's complaint states specific allegations

describing the conduct of an individual official sufficient to raise a constitutional claim but the name of the defendant is not known, the prisoner should have the opportunity to engage in limited discovery in order to ascertain the identity of the defendant. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). Guidelines for discovery will be set by the magistrate judge assigned to this case. Once the name of the unknown Jane Doe defendant is discovered, Plaintiff shall file a motion to substitute the identified female guard in place of the generic designation in the case caption and the Jane Doe designation in the complaint.

### Disposition

**IT IS HEREBY ORDERED** that, for the reasons stated, **COUNT 1** shall **PROCEED** against **KEELING** and **UNKNOWN OFFICER JANE DOE**. **COUNT 1** is **DISMISSED without prejudice** as to **UNKNOWN OFFICER JOHN DOE**. Because there are no further claims against **JOHN DOE**, that defendant is **DISMISSED without prejudice** from this case.

**IT IS FURTHER ORDERED** that **COUNT 2** is **DISMISSED without prejudice**. Because there are no further claims against it, **WABASH COUNTY**, **ILLINOIS**, is **DISMISSED without prejudice** from this case.

**IT IS FURTHER ORDERED** that service will be directed as follows. The Clerk of Court shall prepare for Defendant **KEELING**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Order to Defendant's place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the federal rules. Service shall

not be made on the unknown Jane Doe Defendant until such time as Plaintiff has identified her by name in a properly filed amended complaint. Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for this individual.

**IT IS FURTHER ORDERED** that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

**IT IS FURTHER ORDERED** that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered) a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States magistrate judge for further pre-trial proceedings.

Further, this matter is **REFERRED** to a United States magistrate judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all parties consent.*

Plaintiff is **ADVISED** that at the time application was made under § 1915 for leave to commence this action without being required to prepay fees and costs, the applicant and his or

her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: December 14, 2016**

*s/J. Phil Gilbert*
**J. PHIL GILBERT**
**United States District Judge**