# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF ILLINOIS

DAVID SHARP,

    Plaintiff,

v.

JOE KEELING and LYNETTE HENZE,

    Defendants.

Case No. 3:16-cv-01083-JPG-MAB

## MEMORANDUM AND ORDER

**J. PHIL GILBERT, DISTRICT JUDGE**

David Sharp, proceeding *pro se*, filed this Eighth Amendment prisoner suit against the defendants in 2016 when he was incarcerated. The details of his Eighth Amendment claim are irrelevant for the purposes of this order. What is relevant, however, is the current feud regarding the parties' settlement negotiations in this case. The defendants have filed a sealed motion asking the Court to enforce a supposed settlement agreement between Sharp and the defendants. (ECF No. 58.) In support, the defendants have attached all of the emails that are at the heart of this alleged agreement. Here are the relevant portions:

> **Defendants:** "We just hung up after a discussion about possibly settling this matter. I made an offer of [REDACTED]. You made a counteroffer of [REDACTED]. I told you that I would communicate that counter-offer to the insurer. I will get back to you as soon as I can." (ECF No. 58, Ex. 1, pp. 3–4.)
>
> **Sharp**: "Understood." (*Id.*)
>
> **Defendants**: "I can offer to settle this case for [REDACTED]. If you accept, you can email me back that you do, and I will get started on the paperwork this weekend. You will need to sign a release and settlement agreement in order to finalize the settlement and formally end the lawsuit. Then I will prepare a stipulation of dismissal for the court. I'm happy to explain these to you." (*Id.* at 2–3.)
>
> **Sharp**: "Make it [REDACTED] and we can have a deal." (*Id.* at 2.)

1

The parties then had a telephone conversation on the matter, where the defendants said that they would settle the case in the amount of Sharp's latest counteroffer. But the defendants also predicated this on a few extra conditions: no admission of liability by the defendants and a non-disparagement clause in the release. And later, the defendants followed that up with an email, which said:

> **Defendants**: "This is to confirm our conversation from a few moments ago. My clients agree to settle this case for [REDACTED]. As discussed, there will be no admission of liability by Defendants and there will be a non-disparagement clause in the release and settlement agreement. Per your request, I will prepare and forward the documents for your review and signature. Please confirm receipt of this email." (*Id.* at 1.)
>
> **Sharp**: "Understood." (*Id.* at 1.)

The defendants later forwarded Sharp more correspondence about the settlement, and Sharp replied:

> **Sharp:** "I will review them and get back to you." (ECF No. 58, Ex. 3, pp. 9–10.)

But 16 days later, Sharp had still not replied. So the defendants followed-up with Sharp, leading to this exchange:

> **Defendants:** "I wanted to follow up on my 12/24/18 email to you. Have you signed and mailed the documents? … Please let me know." (*Id.* at p. 8.)
>
> **Sharp:** "[I will] print them Friday and review them and have an answer on Monday!" (*Id.* at pp. 7–8.)

Later, during a telephone conversation, Sharp told the defendants that he had been talking with other people and they felt like Sharp was settling for too little. So Sharp began to back out. Soon after, the following exchange occurred:

> **Sharp:** "I don't believe I can or should accept this agreement!" (*Id.* at 5.)
>
> **Defendants:** "Can you please be more specific? Please identify the specific provisions to which you object and why. Thank you." (*Id.* at 4–5.)

2

**Sharp:** "I have been working on this for to [sic] long to just give in to allowing these actions to go unpunished! It was a mistake to even try to find a settlement that is nowhere near worth what I went thru because of these peoples [sic] behavior!" (*Id.* at 4.)

**Defendants:** "Mr. Sharp, I would like to understand the issue. Is there a problem with one of the provisions in the proposed release? Or is the issue that you have changed your mind about the settlement amount of [REDACTED]?" (*Id.* at 3–4.)

**Sharp:** "I have issues with the stipulations and the amount!" (*Id.* at 3.)

**Defendants:** "Mr. Sharp, I am asking you to please be specific about the provisions you object to and why and what you want." (*Id.* at 2.)

**Sharp**: "Call me tomorrow afternoon and we can read it over together." (*Id.* at 2.)

**Defendants**: "I would like you to please put it in writing." (*Id.* at 1.)

**Sharp**: "Fine! I want [REDACTED] and a public apology posted in the Mt. Carmel Newspaper from Joe Keeling! He needs to apologize to me and my family! For not only this lawsuit but his involvement in bringing unnecessary force against me in 2010! When they raided my home with a 40 man [sic] swat [sic] team over an eviction! And that apology better be good! And I want an [sic] notarized letter of admission stating that he knowing [sic] mistreated me in the county jail! I will need that for another purpose but I wont [sic] make that public! And I will destroy it after I used [sic] it to make an appeal to reduce my parole time I have remaining!" (*Id.* at 1.)

Now, the defendants want the Court to enter an order enforcing the parties' settlement agreement. The defendants are certainly correct that a party cannot avoid a previously-made settlement agreement simply by changing their mind later on. *Glass v. Rock Island Refining Corp.*, 788 F.2d 450, 454-55 (7th Cir. 1986). The problem for the defendants, however, is that there was no valid contract here. Under Illinois law, a contract requires an offer, acceptance, and a meeting of the minds as to the material terms. *Dillard v. Starcon Int'l, Inc.*, 483 F.3d 502, 506 (7th Cir. 2007).

But here, there was never an acceptance. While the defendants accepted the monetary amount that Sharp offered, they predicated that acceptance on two more material terms: no

admission of liability by the defendants and a non-disparagement clause in the release. And under Illinois law, "an acceptance requiring any modification or change in terms constitutes a rejection of the original offer and becomes a counteroffer that must be accepted by the original offeror before a valid contract is formed." *Finnin v. Bob Lindsay, Inc.*, 852 N.E.2d 446, 448 (Ill. App. 2006). So when the defendants added additional material terms to Sharp's offer, what they brand as an acceptance was actually a counteroffer.

And the emails make clear that Sharp did not accept that counteroffer: when the defendants said that they were sending the documents over for Sharp to review and sign, he said "[u]nderstood." And when the defendants later followed up, Sharp said: "[I will] print them Friday and review them and have an answer on Monday!" And finally, once Sharp did review the materials, he said: "I have issues with the stipulations and the amount!" These exchanges make it crystal clear that (1) Sharp never accepted the defendants' counteroffer, and (2) there was not a true "meeting of the minds" here until Sharp reviewed the documents that contained the additional stipulations in the defendants' counteroffer. Sharp has confirmed all of this in his response to the defendants' motion. (ECF No. 63.)

While the Court understands that negotiating with pro se litigants with no formal legal training can be frustrating at times, the approach that the defendants took here—filing a sealed motion with the Court to enforce a settlement in which there was never a valid contract in the first place—is not to be encouraged. The Court accordingly **DENIES** the defendants' motion. (ECF No. 58.) And because this feud has mucked up the dispositive motion deadline and trial date, the Court will also **GRANT** the defendants' request to postpone their filing of a pretrial order. (ECF No. 64.) The Court **DIRECTS** the parties to confer with Magistrate Judge Beatty on

4

an amended scheduling order in this case that will set a new trial date and give the parties adequate time to file dispositive motions.

**IT IS SO ORDERED.**

**DATED: APRIL 25, 2019**

**s/ *J. Phil Gilbert*** 
**J. PHIL GILBERT** 
**U.S. DISTRICT JUDGE**
